# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| MARK GILLESPIE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO.: |
| THE BOARD OF TRUSTEES OF § | |
| THE UNIVERSITY OF SOUTH § | 1:25-cv-450 |
| ALABAMA, and JOHN § | |
| MARYMONT, in his individual and § | JURY DEMAND |
| official capacities, § | |
| § | |
| Defendants. § | |

## COMPLAINT

### I. INTRODUCTION

1. This is a civil action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment, including the rights to procedural due process, and to assert a state-law breach of contract claim arising from Defendants' unlawful reduction of Plaintiff's salary and interference with rights flowing from his tenured status.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for federal questions and civil rights claims, and supplemental jurisdiction under 28

U.S.C. § 1367 for the state-law breach of contract claim.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants operate in this District.

### III. PARTIES

4. Defendant Board of Trustees of the University of South Alabama (hereafter "USA" or "University") is a public body corporate under Alabama law.

5. Defendant John Marymont (hereafter "Dean Marymont") was or is Dean of the College of Medicine and acted under color of state law at all times relevant.

### IV. STATEMENT OF FACTS

6. Dr. Gillespie holds tenure at USA, serving most recently as Professor of Pharmacology and Chair of the Department of Pharmacology.

7. Dr. Gillespie never received a negative employment evaluation by Defendants.

8. Plaintiff's annual reappointment letters and the University's Faculty Handbook confirm that his salary was state funded.

9. In or around November 2024, Dean Marymont removed Plaintiff from his administrative role as chair and unilaterally reduced Plaintiff's salary by approximately forty percent, falsely attributing the reduction to the loss of a

"stipend" that does not exist.

10. Despite the unjust reduction in his salary, Dr. Gillespie made diligent and repeated efforts to resolve the issue informally and through internal University channels.

11. After learning about the abrupt salary reduction, Dr. Gillespie immediately requested clarification and justification for the change in pay, pointing out that his annual appointment letters made no mention of his compensation including a stipend that could account for approximately forty percent of his prior pay rate.

12. He raised his concerns directly with Dean Marymont and repeatedly sought assistance from Provost Andy Kent, who acknowledged the problem but failed to take corrective action.

13. Dr. Gillespie sought help from the University's Ombudsman to mediate a resolution. The Ombudsman attempted to facilitate communication between Dr. Gillespie and University administration but was unable to overcome Dean Marymont's continued refusal to reconsider or follow established policy.

14. Throughout this time, he provided documentation disproving the claim that his salary included such a large, removable stipend and consistently requested that the administration follow its own policies and procedures.

15. Further, Dr. Gillespie filed an internal grievance consistent with the

University's Faculty Handbook, which requires faculty members to exhaust all administrative remedies before seeking outside relief.

16. Despite these good-faith efforts, University officials either ignored his concerns, delayed the process, or actively obstructed any meaningful review, leaving him with no effective remedy for the unlawful salary cut.

17. Documents and correspondence from this period show that Dean Marymont and other administrators repeatedly delayed the grievance process, failed to schedule required meetings, and in some instances explicitly blocked Dr. Gillespie's attempts to have his grievance and related request for emeritus status fairly reviewed by the appropriate faculty committees.

18. At no point did the Defendants provide Dr. Gillespie with advance written notice of the salary change, a formal statement of reasons, or a pre-deprivation hearing, all of which are mandated under established University policy and required by constitutional due process when modifying the protected property interest of a tenured professor's compensation.

19. This reduction was made without prior notice, without an opportunity to be heard, and contrary to University policies, which incorporate the Faculty Handbook requiring procedural safeguards for adverse employment actions.

20. In an apparent effort to further marginalize Dr. Gillespie and deter him from continuing to press his claims, Dean Marymont also obstructed Dr. Gillespie's

application for emeritus status by refusing to forward it for required faculty consideration, contrary to established University practice for retiring tenured professors in good standing.

21. The Defendants' actions and/or inactions are not justified by any legitimate or good-faith interpretation of University policy, but instead an arbitrary misuse of authority.

## V. CAUSES OF ACTION

**COUNT I — VIOLATION OF 42 U.S.C. § 1983 (Procedural Due Process)**

22. Plaintiff realleges and incorporates by reference paragraphs 1–22 above as if fully set forth herein.

23. Plaintiff holds a valid and protected property interest in his tenured faculty position and in the salary attached to that tenured position, as guaranteed by University policies, the Faculty Handbook, and the annual reappointment letters confirming his full compensation as base salary, not subject to any discretionary stipend.

24. The abrupt and substantial reduction of Plaintiff's salary deprived him of this constitutionally protected property interest under color of state law.

25. Defendants failed to provide Plaintiff with advance written notice of the intended salary reduction, a meaningful statement of reasons, or any pre-deprivation hearing or post-deprivation hearing with due process safeguards, despite

the clear requirements of the Faculty Handbook and long-established Constitutional guarantees.

26. By failing to afford Plaintiff even minimal procedural protections before depriving him of this property right, Defendants violated Plaintiff's right to procedural due process under the Fourteenth Amendment to the United States Constitution.

27. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer lost income, damage to his reputation and standing in the academic community, diminished retirement benefits, and significant emotional distress.

**COUNT II — BREACH OF CONTRACT**

28. Plaintiff realleges and incorporates by reference paragraphs 1–22 above as if fully set forth herein.

29. Plaintiff's employment relationship with the University is governed by a valid and enforceable contract, consisting of his tenure agreement, annual reappointment letters, the Faculty Handbook, and the University's established written policies and practices.

30. The terms of this contract guaranteed Plaintiff a fixed salary for his tenured faculty position, with no provision authorizing a discretionary stipend comprising nearly half of his pay.

31. Defendants materially breached this contract by unilaterally reducing Plaintiff's salary under the false pretense of removing a nonexistent stipend and by

failing to comply with required procedures for modifying the terms or compensation of a tenured faculty member.

32. Defendants further breached their contractual obligations by obstructing Plaintiff's internal grievance process and blocking his application for emeritus status in bad faith.

33. As a direct result of Defendants' breach, Plaintiff has sustained and will continue to sustain substantial financial losses, including lost wages, and reduced retirement income, among other compensable damages.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Declare that Defendants' reduction of Plaintiff's salary without due process violates Plaintiff's rights under the Fourteenth Amendment to the United States Constitution;

B. Declare that Defendants' actions constitute a material breach of Plaintiff's employment contract with the University of South Alabama;

C. Issue preliminary and permanent injunctive relief restoring Plaintiff's salary to its full pre-reduction level and prohibiting Defendants from making further unilateral reductions without due process and adherence to the Faculty Handbook and University policies;

D. Award Plaintiff compensatory damages, including back pay, lost benefits, diminished retirement income, and consequential damages in an amount to be determined at trial;

E. Award Plaintiff pre-judgment and post-judgment interest as provided by law;

F. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and

G. Grant such other and further relief as the Court deems just and proper.

Dated: November 7, 2025.

/s/ Eric C. Sheffer
Eric C. Sheffer
ASB: 3568J14X
Wiggins Childs Pantazis
Fisher Goldfarb LLC
301 19th Street North
Birmingham, AL 35203
Tel: (205) 314 – 0582
esheffer@wigginschilds.com
**Counsel for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**